## THE HENRY E.

## THE MAGIC CITY.

## THE JIM.

## THE U. S. D. NO. 3.

## EXNER SAND & GRAVEL CORPORATION v. GALLAGHER BROS. SAND & GRAVEL CORPORATION et al.

### Nos. A–16944, 16935, 16936.

District Court, E. D. New York.

June 22, 1945.

Purdy & Lamb, of New York City (Edmund Lamb, and Thomas Irving, both of New York City, of counsel), for Exner Sand & Gravel Corporation.

Foley & Martin, of New York City (Christopher Heckman, of New York City, of counsel), for Gallagher Bros. Sand & Gravel Corporation.

John R. Stewart, of New York City, for F. E. Grauwiller Transp. Co.

Reid, Cunningham & Freehill, of New York City (James E. Freehill, of New York City, of counsel), for United States Dredging Corporation.

GALSTON, District Judge.

These causes, under stipulation, were tried together.

Gallagher Brothers Sand & Gravel Corporation chartered the scow Henry E from the Exner Sand & Gravel Corporation on December 12, 1942, and the owner was to provide the scow with a captain on board. The charter was for an indefinite

period at an agreed rate per day. Up to the time of the happening of the accident hereafter to be described, on September 13, 1943, the scow remained in the possession of Gallagher Brothers Corporation. On August 28, 1943 the captain of the scow Henry E left the scow. That fact was made known to both the owner and the charterer. Gallagher Brothers continued to use the scow, and after it had discharged the cargo which was then lying upon it at Bridgeport, Connecticut, on September 2, 1943, the scow was towed on September 7 to Oyster Bay, arriving on September 8, 1943. It was there to be loaded with a cargo of sand and gravel for the charterer.

The scow was placed alongside the stakeboat U. S. D. No. 3, owned by the United States Dredging Corporation. At the request of Gallagher Brothers, the scow, on September 9, 1943, was taken by the United States Dredging Corporation from its stakeboat and placed alongside its dredge, Magic City, to receive a split load of sand and gravel. At the time there were two other scows lying at the stakeboat, and the order to the United States Dredging Corporation was to load all three scows with separate cargoes, two of the orders being for full cargoes and the other for five-sixths of a full cargo. As to what cargoes were to be placed on the respective scows was left to the discretion of the plant superintendent of the United States Dredging Corporation. He put a full cargo on the scow Henry E. A full cargo is normally 600 cubic yards. The normal carrying capacity of the scow Henry E is 660 to 670 cubic yards, and it appears that there was actually placed upon the scow, on September 9, a quantity of cargo in excess of 720 cubic yards. When thus loaded the scow had but six inches of freeboard.

The loading having been completed, on September 10, 1943, the Henry E was towed by the tug Barretto, owned and operated by the United States Dredging Corporation, and put alongside the U. S. D. No. 3 stakeboat. On September 11, 1943 there still being no captain aboard the Henry E, the dredging watchman pumped the scow Henry E on the afternoon of that day and reported to the dredging superintendent that water was seeping into the hold, and that the scow would require watching and attention. The necessary pumping was not thereafter provided, and in consequence, on September 12, 1943, at or about 2 P. M., the Henry E overturned. In so doing, the Henry E sustained damage and also struck the stakeboat U. S. D. No. 3, and the scow Jim, owned by the libellant, F. E. Grauwiller Transportation Co., Inc., and damaged both of those vessels.

Thus the problem presented is to fix liability for the damage sustained by these three boats.

It is clear that the overturning of the scow Henry E was caused, at least in part, by water draining from the cargo of wet sand and gravel which had been placed on her deck by the Magic City. Those in control of the Magic City knew, or should have known, that such a cargo of wet sand and gravel would cause water to drain therefrom. They also knew that there was no captain on board the Henry E, but nevertheless permitted the Henry E to be towed from the dredge to the stakeboat without making proper provision for the removal of such water.

The Exner Sand & Gravel Corporation is likewise connected with the happening of the accident in that it failed to provide a captain in substitution of the bargeman who had left the vessel on August 28, 1943. Certainly the Exner Corporation is not entitled to limit its liability. Its general manager knew that there was no captain aboard, and he also knew the use to which the charterer was putting the scow. He knew that a man should have been on board to pump out the water from the wet cargo. His experience also informed him that there was leakage to be expected as a result of the loading of such cargo.

Gallagher Brothers also are involved in the negligence which resulted in the damage. They knew that there was no captain aboard and that the character of the cargo was such as to require pumping out. Nevertheless they took the risk of sending a scow for loading with no such attendant on board.

However, to find as I do that there was a contribution of fault, still leaves open the question of primary and secondary liability. The United States Dredging Corporation was primarily liable. They knew the facts, i. e., they knew that the Henry E was unattended; they knew the cargo capacity and also that a wet sand and gravel cargo would lead to drain-

age of water and consequent pumping. Nevertheless they proceeded with the loading operation at the dredge, the towing from the dredge to the stakeboat, and they failed to keep the scow pumped. Those faults establish primary liability of the United States Dredging Corporation. And such liability is upon the dredge Magic City in rem, and upon her owner, United States Dredging Corporation, as the employer of the crew. As to such primary liability as between the stevedoring corporation and the charterer, see the recently decided case in this Circuit, McGeeney, as owner, etc., v. Moran Towing Corporation and Maritime Terminal Co., Inc., 149 F.2d 791.

So far as the liability of Gallagher Brothers to the owner is concerned, I find liability, for the charterer, knowing full well all the facts as has been indicated, nevertheless elected to use the scow. It must be held responsible for the failure to return the scow in accordance with the obligations of its charter. However, this liability is secondary to the primary liability of the United States Dredging Corporation and the dredge Magic City.

So that in the first of these causes, Exner Corporation against Gallagher Brothers, respondent, and United States Dredging Corporation and dredge Magic City, impleaded, the libellant may have a decree for damages against the United States Dredging Corporation, and the dredge Magic City primarily, and against Gallagher Brothers Sand & Gravel Corporation secondarily.

In the second cause, the consolidated suit, the Grauwiller Transportation Co., libellant, owner of the innocent bystander, the scow Jim, is, of course, entitled to a decree. Here again primary liability must be decreed against the United States Dredging Corporation and the dredge Magic City, and secondary liability against Gallagher Brothers.

The Exner Sand & Gravel Corporation seeks to avoid all liability on the ground that though the overturning of the scow Henry E gives rise to a presumption of negligence against the scow (see The Buffalo, 2 Cir., 56 F.2d 738) there is no warranty of seaworthiness to the other vessels damaged. See The Cullen No. 32, 2 Cir., 62 F.2d 68. The Henry E claims that the presumption of negligence may be rebutted. Of course, that is so, but certainly the Henry E was negligent in failing to provide a captain, and in consequence cannot escape liability. However, its liability would be of a tertiary nature. The Grauwiller Transportation Company, libellant, may, therefore, have such a decree in the consolidated cause against all the other parties with liability as to each in the order indicated herein.

The libel of the United States Dredging Corporation will be dismissed.